El Pueblo *v.* Cancel.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 66.—Resuelto en junio 29, 1907.

Violación—Instrucciones Erróneas al Jurado.—En una causa de violación fundada en el inciso 3º. del Art. 255 del Código Penal, ó sea en la ejecución del acto carnal habiendo sido embriagada la ofendida por el violador, el Juez Sentenciador, entre otras instrucciones, dió al Jurado, la siguiente: ''Una ofendida de buenas costumbres que sea embriagada y aquella embriaguez sea causada por el acusado con el propósito de excitar en ella deseos lujuriosos, y que, aprovechándose de aquel estado de embriaguez de la ofendida, y del estado ese lujurioso, consigue el individuo realizar su propósito, se encuentra comprendido ese coito dentro del caso de la mujer que lo sufre sin su consentimiento, porque una mujer en esas condiciones, no puede consentir legalmente.''

La Corte resolvió, que esa instrucción es errónea y que, ''la embriaguez que impide á la víctima del violador, hacer resistencia, debe ser tal, que no solo excite deseos lujuriosos en la mujer ofendida, sino que ésta resulte incapacitada para hacer resistencia.''

VIOLACIÓN—EMBRIAGUEZ DE LA OFENDIDA—INCAPACIDAD PARA CONSENTIR.—Una simple excitación causada por algún licor que produzca deseos de tener contacto carnal, no hace á la ofendida incapaz para dar su consentimiento al acto carnal. La embriaguez de la violada, no lleva consigo la presunción de incapacidad para consentir, á no ser que se pruebe que su embriaguez haya llegado al extremo de perder el conocimiento, ó que no se dé cuenta de lo que pasa.

INSTRUCCIONES ININTELIGIBLES.—Las instrucciones que un Juez dé al Jurado deben ser claras y referirse concretamente á los hechos que son objeto de prueba, y su falta de claridad es causa bastante para no poder considerarlas como una expresión correcta de la ley.

VIOLACIÓN—PENETRACIÓN.—El crimen de violación queda consumado con la más ligera penetración del miembro del ofensor, aunque no se efectúe la emisión por parte del hombre, y el efecto de esa penetración no depende de si la ofendida hace ó no resistencia, ó está incapacitada para hacerla.

VIOLACIÓN—DECLARACIÓN DE LA OFENDIDA—NO ES NECESARIA SU CORROBORACIÓN.—En los casos de violación, lo mismo que en los de seducción, puede ser condenado el ofensor con la sola declaración de la ofendida, sin ser indispensable su corroboración, ni ser aplicable á estos casos las disposiciones del Art. 250 del Código de Enjuiciamiento Criminal.

VIOLACIÓN—INSTRUCCIONES AL JURADO—PELIGROS DE CONDENAR Á UN ACUSADO CON LA SOLA DECLARACIÓN DE LA OFENDIDA.—En todos los casos de violación el Juez sentenciador debería seguir la práctica de instruir al Jurado advirtiéndole lo peligroso que resultaría dar un veredicto de culpabilidad fundado únicamente en el testimonio de la ofendida, sin estar corroborado por hechos y circunstancias que lo sostenga.

DUDA RAZONABLE—SU DEFINICIÓN.—Por duda razonable en derecho penal, no es meramente una duda posible, sino que es aquel estado del caso, que después de una detenida comparación y consideración de todas las pruebas, deje los ánimos de los jurados en tal condición, que ellos no pueden decir que tienen una convicción firme, ni una certeza moral, de la veracidad de la acusación formulada contra el procesado.

VEREDICTO—SU REVISIÓN.—Este Tribunal no revisará el veredicto del jurado con respecto á una cuestión de hecho, á menos que dicho veredicto sea claramente erróneo, ó el resultado de parcialidad, apasionamiento ó prejuicio.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. Manuel F. Rossy.

Abogado del apelado: Sr. Rossy, Fiscal.

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

El acusado en el presente caso fué declarado culpable del delito de violación cometido con una joven de catorce á quince

años de edad que vive en Utuado, y condenado á seis años de prisión en el presidio. Se alega que el delito se cometió en la casa del acusado, situada en dicha ciudad, durante el mes de julio de 1906.

El acusado fué juzgado por un jurado, que después de haber recibido amplias instrucciones del tribunal, dió un veredicto de culpabilidad, de acuerdo con cuyo veredicto se pronunció y dictó debidamente la sentencia.

Contra dicha sentencia se interpuso recurso de apelación ante este tribunal, y se presentaron alegatos, tanto á favor del acusado, como á favor del Pueblo de Puerto Rico, y se trata de conseguir la revocación de la sentencia por dos motivos, siendo el primero, errores en las instrucciones dadas al jurado; y el segundo, insuficiencia de la prueba. Estos motivos serán considerados y discutidos por su orden.

Durante el curso de este dictamen conviene llamar la atención sobre el hecho de que el artículo 255 del Código Penal de Puerto Rico, que define el delito de violación, y señala la pena para el mismo, corresponde casi exactamente con el artículo 261 del Código Penal de California, el 4911 del Código Penal de Idaho, y el 450 del Código Penal de Montana.

Las instrucciones dadas al jurado por el juez de la corte de distrito, fueron las siguientes:

"Señores Jurados: En las instrucciones que voy á daros, procuraré ser lo más conciso posible. Mis instrucciones han de ser referentes al acusado y al delito imputado, después á la apreciación de la prueba, y al modo de dictar vuestro veredicto. Respecto al acusado he de decir, que todo hombre se supone ó presume inocente, mientras no se pruebe lo contrario: que la prueba corresponde al Ministerio Fiscal que acusa; y en caso de duda, debe ser absuelto el acusado. La duda á que se refiere la ley es el estado de suspensión del entendimiento cuando oída la prueba, no halla el juicio que la razón establece motivo bastante para afirmar la culpabilidad del acusado. La certeza que require la ley para un fallo, no es lo certeza absoluta que excluye la posibilidad de equivocarse, sino la convicción en un ánimo no prevenido. El delito imputado al acusado, es el de violación, que se comete cuando yace un individuo con una mujer que no sea la propia,

en cualquiera de los casos que establece el artículo 255 del Código
Penal. Y en esta acusación se dice que: "En Utuado, Territorio de
la Corte de Distrito de Arecibo, y en época anterior á esta acusación,
ó sea una mañana del mes de julio último, el acusado, Francisco Can-
cél Guzmán, que es de cincuenta y dos años de edad, voluntaria y
maliciosamente invitó á almorzar á su casa, á la joven Enriqueta
Virella y Rivera, de 14 á 15 años de edad, dándole á beber vino y cer-
veza que produjeron mareos y náusea, conduciéndola á una habita-
ción de la casa, en donde á la fuerza y contra su voluntad, y abusando
del estado de embriaguez en que dicha joven se encontraba, por lo que,
no pudiendo oponer resistencia, yació con ella, no siendo su mujer
propia y perdiendo en dicho acceso carnal su virginidad la expresada
joven." En esta clase de delitos de violación (exceptuando aquellos
en que se trata de mujeres menores de 14 años, ó si se cometieren en
la creencia de que el acusado era su marido,) los demás casos quedan
reducidos á dos: uno, que se refiere á coitos ejecutados contra la volun-
tad expresa y manifiesta de la mujer; y otro, que se refiere á coitos
verificados sin el consentimiento de la mujer. En aquellos comprendi-
dos dentro del primer caso, están las violencias que tienen su origen
en el ejercicio de una fuerza material que vence otra fuerza material
opuesta por la mujer; y en los segundos, aquellos que se refieren á la
imposibilidad en que se encuentra una mujer de resistir, y, sin em-
bargo, se realiza el coito, sabiendo que es sin su voluntad. No es
necesario, señores Jurados, que una persona esté en el uso absoluto
de la razón, para que se halle comprendida dentro de este segundo
grupo en el caso de que se realize con ella un coito. No es necesario
que la mujer esté impedida de la razón de tal manera que esté privada
de ella de tal modo que solo en estado letárgico se pueda cometer el
hecho delictivo. Basta que la mujer esté privada, esté impedida de
oponer resistencia, y esto, si bien puede nacer en determinados casos
de la falta de la razón, en otros puede nacer de la posición material
en que se encuentra la víctima con respecto al agresor, que impida
por la dicha posición que ocupe, hacer resistencia de ninguna especie.
En el caso en que una mujer no haga resistencia, por encontrarse in-
capacitada para hacerla, la mera penetración á que da lugar el coito,
es fuerza bastante apreciable para fundar un veredicto. El delito
de violación esencialmente consiste en el ultraje inferido á la persona
y á los sentimientos de la mujer; de aquí que en ese caso, á que me

referí antes, exista esa dualidad, pudiendo ser contra la voluntad de la mujer, y pudiendo ser sin el consentimiento de la mujer; porque sin el consentimiento de la mujer también es ultraje cometer ese acto, que debe ser con claro consentimiento de ella y conforme á su sentimiento. Esta violación es lo que no quiere la ley y es lo que la ley castiga. Una ofendida .de buenas costumbres que sea embriagada y aquella embriaguez sea causada por el acusado con el propósito de excitar en ella deseos lujuriosos, y que aprovechándose de aquel estado de embriaguez de la ofendida, y del estado ese lujurioso, consigue el individuo realizar su propósito, se encuentra comprendido ese coito dentro del caso de la mujer que lo sufre sin su consentimiento, porque una mujer en esas condiciones no pueden consentir legalmente. Debeis tener muy presente, señores jurados, la prueba que ante vosotros se ha desarrollado. Yo no voy á entrar en estudio de ella, pero yo os encargo que tengais presente que resulta peligrosa una declaración de culpabilidad por solo el testimonio de una violada no sostenido por hechos y circunstancias que lo corroboren. Debeis, por tanto, ver la prueba practicada, ver el testimonio de la mujer ofendida, y si el testimonio de la mujer ofendida está sostenido por circunstancias y hechos que lo corroboren. Es claro que esta corroboración no ha de ser de tal forma que todo el testimonio, parte por parte, tenga que ser absolutamente corroborado; porque entonces sobraría ese testimonio, y se exigiría solo ese testimonio de los corroborantes. Lo que la ley quiere al buscar la corroboración, (ésta no exige, sino advierte el peligro de dar un veredicto por el solo dicho de una ofendida que no esté corroborado), lo que la ley busca, es la mayor amplitud posible, lo que busca es una guía para el que aprecia la prueba; una guía que le indique si puede ó no confiar en la veracidad de la persona ofendida. Y teniendo presente, que la corroboración debe ser en aquellos hechos y circunstancias que rodean al delito, porque el acto material del mismo delito, ó sea el coito, es natural que no ha de realizarse ante testigos, y que ese acto no puede ser corroborado, porque solo también en casos especiales puede haber testigos de ese acto. De modo que, en todo lo que rodea la acusación, en todo lo que se expone, como sucesos anteriores y posteriores al delito, ó sea al hecho del coito, en todo eso debeis buscar la corroboración para tener mayor seguridad al dar vuestro fallo. No teneis obligación de seguir á unos testigos con preferencia de otros, ni teneis obligación de seguir al mayor número en preferencia al menor. Un solo testigo, si os merece entera

y absoluta confianza para formar una conciencia moral, un solo testigo es bastante para dar el fallo. Apreciad la prueba en su conjunto, teniendo presente las contradicciones en que hayan incurrido los testigos al presentar sus declaraciones; pero teniendo presente también que solo los hechos esenciales que constituyen el delito es lo que el Fiscal, el acusador, está obligado á probar: que en todo lo que no sea esencial á la constitución del delito, no está en su obligación traer á prueba. Prueba que no haya podido traerse respecto á extremos que no son esenciales, no debeis tenerlas en cuenta, si esa prueba no conduce á la apreciación de hechos y circunstancias que vengan á corroboraros las declaraciones aquí vertidas; y con ese extracto, con ese resumen de la prueba, formad vuestro criterio y dad un veredicto con arreglo á conciencia. No debeis apreciar la prueba caprichosamente, debeis apreciarla ejercitando todas vuestras facultades para acertar. El veredicto tiene que ser por unanimidad. En él debeis declarar al acusado inocente si lo creeis así, ó la declaración de culpabilidad si lo creeis culpable. Y también os advierto que el veredicto debe ser por escrito, expresando el delito.''

Aceptando la definición del delito de violación tal como se halla consignada en el artículo 255 del Código Penal, es evidente que se ha tramitado esta causa en el supuesto de que el acusado había realizado un acto carnal con la joven agraviada, mientras ésta se hallaba impedida de ofrecer resistencia por el efecto de una sustancia embriagadora, á saber: vino y cerveza, que le había dado el acusado.

Violación se define, en las obras más autorizadas sobre el derecho criminal, como consistente en la realización por parte de un hombre, de un acto carnal con una mujer, cuyo acto se realice violenta é ilegalmente, y contra la voluntad de dicha mujer; pero nuestra ley, ó sea el artículo 255 del Código Penal añade otras calificaciones á dicha definición. El citado artículo dice lo que sigue:

''Se comete violación al tener contacto carnal con una mujer que no fuere la propia, en cualquiera de los casos siguientes:

''1. Si la mujer fuere menor de catorce años.

''2. Si por demencia ú otro defecto mental, temporal ó permanente, estuviere incapacitada para consentir legalmente.

"3. *Si estuviere impedida de oponer resistencia* á causa de amenazas de grave é inmediato daño corporal acompañadas de la aparente aptitud para ejecutarlas ó *por efecto de cualquier narcótico ó anestésico administrado por, el reo, ó con conocimiento de éste.*

"4. Si opusiere resistencia, pero ésta fuere vencida por fuerza ó violencia.

"5. Si al tiempo de cometerse el acto, no tuviere ella conciencia de su naturaleza, y esta circunstancia fuere conocida por el acusado.

"6. Si se cometiere en la creencia de que el acusado era su marido, debido á alguna treta, simulación ú ocultación puesta en práctica por el acusado para inducirla en tal creencia."

Como se ha dicho anteriormente, está claro que se ha formulado y presentado esta acusación, con arreglo al párrafo 3º. de este artículo. En el lenguaje medical, se llama "anestésico" aquello que produce insensibilidad, como el cloroformo ú otra droga de igual carácter. Según la definición de la palabra "narcótico," ésta significa una medicina que tomada en dósis medicinal, alivia el dolor y produce sueño, pero que en cantidades perniciosas, produce estupor, letargo ó convulsiones, y que causa la muerte de la persona á quien se la den en dosis suficiente para ello. Sustancias embriagadoras son aquellas que poseen cualidades que producen embriaguez, por ejemplo, licores embriagadores. Vino ó cerveza pueden calificarse como licores embriagadores, con tal que se administren en cantidades suficientes (para producir embriaguez). Embriaguez significa borrachera, que á su vez, expresa ó indica el estado de una persona que se halla dominada por el efecto de licores alcohólicos. El término "borrachera" se refiere más bien á la costumbre (de beber licores alcohólicos hasta llegar á emborracharse ó embriagarse); las palabras "embriaguez" y "ebriedad" tienen referencia á casos específicos.

No se tomó excepción, en el acto del juicio, contra las instrucciones del tribunal, ni se pidió por el abogado del acusado instrucción alguna por la cual se hubiesen corregido los errores en que había incurrido el juez en las instrucciones dadas

al jurado; pero dichos errores son de tal naturaleza, que debemos considerarlos como fundamentales; y es preciso revisarlos en esta apelación.

La supuesta exposición de la ley hecha por el juez sentenciador en las instrucciones dadas al jurado, no está sostenida por las autoridades. Dicha exposición es errónea en varios puntos. Las autoridades han sido comparadas y discutidas por los Tribunales Supremos de California, Montana é Idaho, en las notas que se encuentran añadidas á las respectivas secciones de los Códigos citados anteriormente.

Véanse el Código Penal de California, pp. 122, 123, 124, 125 y 126; también los Códigos de Montana, pp. 834, 835 y 836; y los Códigos Comentados de Idaho, Tomo IV, pp. 134, 135, 136, 137 y 138.

La embriaguez que impide á la víctima del violador, de hacer resistencia, debe ser tal que no sólo excite deseos lujuriosos en la mujer ofendida, sino que ésta resulte incapacitada para hacer resistencia. Una simple excitación causada por algún licor que produzca deseos de tener contacto carnal, no la hace incapaz para dar su consentimiento á tal contacto. Por el simple hecho de que una mujer esté embriagada, no se presume que se encuentra incapacitada para dar su consentimiento, á menos que su embriaguez haya llegado á tal extremo que ella se halle privada de sentido, hasta cierto punto á lo menos ó no tenga conciencia de lo que está pasando. No está muy claro lo que el juez sentenciador quiere decir al hablar de la imposibilidad en que se encuentra la mujer de oponer resistencia á la violencia ó fuerza, á consecuencia de la posición material que ocupe con respecto á su agresor. Si él quiere decir que la posición en que se encontraba su cuerpo, impidió que la mujer hiciera resistencia alguna, entonces lo dicho no es aplicable á las pruebas, porque no hay prueba que lo sostenga. Ella dice en su declaración, según los detalles consignados en los autos, que el acusado colocó un lío pequeño encima de una silla, y la obligó á sentarse en la misma, y que en esta forma realizó su propósito. No aparece de la declara-

ción que, en esta posición una mujer se hubiera encontrado más impedida de hacer resistencia que si hubiese estado acostada en la cama. En efecto, parece que al ocupar una mujer semejante posición, sería más difícil para un hombre efectuar la penetración; y la declaración de la ofendida es algo contradictoria en cuanto á los pormenores de este punto. Si el juez no se refería á esta posición física de la ofendida, entónces nos parece ininteligible la instrucción y demasiado oscura para poder considerarla como una correcta exposición de la ley.

En las instrucciones dadas por el tribunal, se dice también que en el caso de que la mujer no hiciera ninguna resistencia, por encontrarse incapacitada para hacerla, la mera penetración á que da lugar el coito, es fuerza bastante apreciable para fundar un veredicto. Aún una ligera penetración ha sido declarada suficiente en casi todos los casos, sin efectuarse una emisión por parte del hombre, para consumar el delito de violación; y el efecto de penetración no depende, como lo indica la corte inferior, de si la mujer hace ó no resistencia, ó de si se encuentra ó no incapacitada para hacerla. Esta exposición de la ley hecha por el tribunal inferior con respecto á penetración, no puede aceptarse como correcta.

Además, el tribunal, en sus instrucciones al jurado, dice, en efecto, que la declaración de la mujer ofendida debe ser sostenida por hechos y circunstancias que la corroboren. Esto es erróneo; y aunque el error puede haber resultado á favor del acusado, no se puede aprobar una sentencia que ha sido basada en instrucciones tan palpablemente erróneas.

La instrucción del tribunal, que á pesar de ser un poco vacilante sobre el punto, declara que la corroboración sea necesaria para sostener, á lo menos, una parte de la declaración de la mujer ofendida, para hacerla digna de ser considerada por el jurado, es enteramente incorrecta. *People* v. *Maye,* 66 Cal., 597. Los tribunales han declarado que es peligroso hacer una declaración de culpabilidad, fundada en la evidencia del testimonio no apoyado de la mujer que se alega haber

sido violada. Puede ser que el tribunal haya incurrido en el error de exponer con demasiada energía la regla con respecto á este punto por la lectura del artículo 250 del Código de Enjuiciamiento Criminal que se refiere al delito de promover ó intentar la promoción de un aborto, ó por contribuir ó ayudar en su perpetración, por seducir con engaño, corromper por medio de halago, ó apoderarse de una mujer soltera, menor de veinte y cinco años, hasta entonces reputada por casta, con objeto de prostituirla. En tales casos el acusado no puede ser declarado culpable sólo en virtud de la declaración de la mujer ofendida, á menos que la declaración de ésta sea corroborada por otras pruebas. Pero esta limitación no es aplicable á violación y ni siquiera á seducción, según se ha resuelto por este tribunal en el caso de Angel Santos y Santos, en cuyo caso se redactó y emitió el dictamen de la corte el 28 de abril de 1905. Todo el asunto fué discutido en dicho dictamen, y se hizo referencia á la sección 1108 del Código Penal de California, y á las decisiones de los tribunales de California que interpretan dicha sección. Es solamente necesario hacer referencia á dichos casos, para demostrar el error en que ha incurrido el tribunal, al instruir al jurado en el presente caso, sobre la cuestión de corroboración en relación al testimonio de la acusadora.

Sin embargo, como se ha dicho por este tribunal, en el caso de *El Pueblo de Puerto Rico* v. *Vidal,* fallado en 5 de diciembre de 1904 en que se hace una cita de la causa de *The People* v. *Benson,* 6 Cal., 223, la regla correcta ha sido enunciada por el Tribunal Supremo de California en una causa muy conocida, en cuya causa el tribunal al discutir el delito de violación, dijo lo siguiente:

"No hay acusaciones que vengan rodeadas de mayor peligro, ó que presten más amplia oportunidad para poner en juego libremente los resortes de que disponen la malicia y el deseo de satisfacer una venganza particular, que las formuladas en causas de esta naturaleza. En estos casos el acusado está casi indefenso, y en vista de la facilidad

con que pueden inventarse y sostenerse acusaciones de esta índole, las cortes han sido muy rígidas al formular las reglas que deben gobernar al jurado al dictar su veredicto.

"Desde la época de Lord Hale hasta la fecha presente, no se ha sometido ninguna causa á la deliberación del jurado, con el solo testimonio de la denunciante, no sostenido por hechos y circunstancias que lo corroboren, sin que el tribunal le haya advertido lo peligrosa que resultaría una convicción ó declaración de culpabilidad, que tuviera por base un testimonio de esa naturaleza.

"El caso de que se trata, está sostenido únicamente por la declaración de la acusadora, que es una muchacha, joven é ignorante, de trece años de edad, y cuya declaración es tan improbable de por sí, que nos justifica en creer que el veredicto era más bien el resultado de prejuicio ó excitación popular que de la tranquila y desapasionada conclusión á que habían llegado en vista de los hechos, doce hombres que habían sido juramentados para desempeñar fielmente su deber. En efecto, esto queda demostrado por la opinión emitida por el Tribunal, al resolver la moción por la cual se pidió un nuevo juicio, en cuya opinión el Juez Presidente no puede menos de expresar graves dudas con respecto á la corrección del veredicto; y nosotros creemos que, á no ser por alguna equivocación con respecto á la regla establecida por este Tribunal para regular la concesión de un nuevo juicio en los tribunales inferiores, no se hubiera jamás permitido que dicho veredicto subsistiera. Una declaración de culpabilidad basada en tales pruebas sería una mancha para la jurisprudencia del país, y un descredito para los juicios por jurado."

Con esta doctrina, enunciada por el Lord Hale, y seguida por el Tribunal Supremo de California, y por este Tribunal en el caso de Vidal anteriormente mencionado, estamos completamente de acuerdo, y unas instrucciones que, en palabras adecuadas, contuvieran la parte sustancial de la decisión de California, deberían darse al jurado, en todos los casos de esta índole, y no serían desaprobadas.

Las instrucciones del Tribunal con respecto á una duda razonable, aunque se aproximan á la corrección, no están del todo exentas de la crítica. Sin reproducir especialmente las palabras usadas por el Juez sentenciador, basta decir que una duda razonable no es meramente una duda posible, porque no

hay nada que se relacione con asuntos humanos que no esté sujeto á alguna duda posible ó imaginaria; pero una duda razonable en la administración del derecho criminal, es aquel estado del caso, que después de una detenida comparación y consideración de todas las pruebas, deje los ánimos de los jurados en tal condición, que ellos no pueden decir que tienen una convicción firme, una certeza moral, de la veracidad de la acusación formulada contra el procesado.   La dificultad que muchos tribunales y jueces tienen en definir lo que es una duda razonable, debía impulsarlos á buscar las definiciones adoptadas por los mejores lexicógrafos legales y adherirse á las mismas, con una precisión razonable, al dar las instrucciones al jurado.

Los errores manifiestos y fundamentales en las instrucciones indicados anteriormente, son ampliamente suficientes para justificar la revocación de la sentencia en el presente caso, y la devolución de este último para la celebración de un nuevo juicio.

Examinemos en parte el otro motivo en que se funda el apelante para pedir la revocación de la sentencia, es decir, la insuficiencia de la prueba.

La prueba en el presente caso, está muy lejos de ser satisfactoria.   Dicha prueba consiste principalmente en la declaración de la joven con la cual se alega haber sido cometido el ultraje.   Su declaración es sustancialmente como sigue:

"Enriqueta Virella, declara á preguntas del Fiscal, que tiene catorce años, lleva dos de residencia en Utuado, y hace cuatro ó cinco meses que es mujer, y conoce al acusado Cancél: que estando de visita en casa del maestro Cirilo, fué llamada por la hija de crianza de Cancél, la convidó á almorzar, y en la mesa le dió cerveza, tomando dos copas, y después del almuerzo Cancél cogió una botella del seibó y le dió dos dedos de vino en una copa que tomó la declarante sin que tomara vino ni Cancél ni Bienvenida, que eran las otras dos personas que almorzaron con ellos; que todos tomaron cerveza; que Bienvenida le pidió también vino, y él le dijo no podía tomarlo, porque era delicada; después se fueron á la sala los tres, y las sirvientas á su trabajo; Cancél fué al cuarto, abrió el ropero, y llamó á la declarante

para enseñarle unas cadenas, figuras postales, y unas cuantas tonterías, y ella fué al cuarto; empezó á cerrar las puertas, y la declarante le preguntó por qué hacía eso, y él contestó que por nada; llamó á Bienvenida, preguntándole qué hacía, y ella le contestó que cosiendo; luego preguntó á la declarante si tenía novio, y le respondió que no; entonces dijo que había que hacer esto. . . . puso una silla en la pared, y encima un lío pequeño, y sentó de golpe á la declarante la que le preguntó que para qué era: antes le había dicho que se subiera á una cama, y como ella no quisiera, la sentó en la silla; que quiso meterla en la cama para hacerle daño; ella se sentía mala, con náuseas, mareada, dolor de cabeza, y cambiaba de color; el acusado se le fijó en el semblante y le preguntó por qué cambiaba de color; sentado encima del lío que había en la silla, el acusado le levantó el traje, se le echó encima y le hizo el daño; no se dió cuenta del hecho porque no estaba en su conocimiento; quería gritar y no le dejaba el acusado y acudieron las dos sirvientas, María Vélez y Natalia Rosa, preguntando qué pasaba, y él les contestó que nada, que se retiraron; después fué la declarante á la letrina á ver si arrojaba, porque tenía náuseas y convulsiones en el estómago y salió para su casa, y como se sentía mala le contó á su abuela lo que el acusado le había hecho, y su abuela le dijo que le había hecho un daño; el padre de la declarante estaba en Jayuya y la madre en cama dando á luz; nada le contó á su padre cuando regresó de Jayuya; no visitaba la casa de Cancél; había almorzado en ella tres ó cuatro veces, estaba en la misma escuela á donde iba Bienvenida, y solo en ese almuerzo del día del suceso, tres de julio, tomó cerveza y vino. Preguntada por el abogado del acusado, declaró: ''que en el almuerzo había dos medias botellas de cerveza Americana Pabst, y tomaron cerveza los tres, la declarante, el acusado, y Bienvenida, la cerveza primero, y después del almuerzo tomó la declarante el vino; era la primera vez que tomaba licor y lo tomó porque el acusado le dijo que era saludable; era un vino como tinto y de gusto desagradable; después del almuerzo fué la declarante á la sala y Bienvenida * * * salió; la sirvienta Natalia servía la mesa, y la otra, María, estaba por allí: lo primero que cerró el acusado cuando la declarante estaba dentro del cuarto fueron unas ventanas que daban á la casa vecina, y luego juntó la puerta; ella buscaba la manera de salir porque comprendía la intención, y andaba, aunque tenía la cabeza mala, pero el acusado le preguntó á quién le huía; no dió voces, ni pidió auxilio; la niña de la casa se fijó en algo y se lo dijo á la sirvienta y cuando las sirvientas se asomaban, ya estaba el acusado cometiendo el hecho, y ellas preguntaron qué era, y Cancél respondió que nada; no podía llamar á las sirvientas porque

el acusado la tenía oprimida, teniendo su cuerpo encima del de ella, y eso le impedía hablar; cuando el acusado quiso que la declarante se acostara en la cama ella estaba de pie y no llamó á nadie y retrocedió buscando por donde salir; el acusado la cogió por los brazos y la sentó en la silla y le echó el cuerpo encima, y las piernas, una por cada lado, quedando en medio las de la declarante; fué á su casa por sus pies y no se acostó. Preguntado otra vez por el Fiscal, dice que sus piernas las tenía abiertas, y preguntado otra vez por el abogado del acusado, dice que cuando se sentó en la silla trató de cerrar sus piernas, pero el acusado las abrió porque tenía más fuerza que ella, y se le tiró encima. Preguntada por el juez, contestó que se le tiró encima después de abrirle las piernas, y las del acusado tocaban las suyas, quedando por fuera las del acusado, y por dentro las de la declarante.''

Este estado de hechos que se encuentra aislado, es apenas suficiente para justificar una declaración de culpabilidad. En vista de unas instrucciones erróneas como las que se han dado en el presente caso, el jurado tal vez se creyó autorizado para dar un veredicto de culpabilidad, pero si se hubiera dado el mismo veredicto, en virtud de instrucciones adecuadas, probablemente se habría considerado la prueba tan débil é insuficiente que la deducción que necesariamente se hubiera hecho de la misma, hubiera sido que el veredicto era el resultado de parcialidad, apasionamiento ó prejuicio, como ha dicho el Tribunal Supremo de los Estados Unidos en el caso de Crompton, que se halla relatado en 138 U. S., 36.

Pero nosotros no queremos basar nuestra decisión en este motivo, sino que preferimos seguir la regla sentada en el caso de Leña Verde que es como sigue: ''Se puede decir generalmente que este tribunal no revisará el veredicto del jurado con respecto á una cuestión de hecho, á menos que dicho veredicto sea claramente erróneo, ó el resultado de parcialidad, apasionamiento ó prejuicio,'' *P. P. R.* contra *D. Díaz,* resuelto el 6 de marzo de 1907.

Por los errores en que ha incurrido el Tribunal en las instrucciones dadas al jurado y que se han señalado anterior-

mente, debe revocarse la sentencia, y devolverse la causa para la celebración de un nuevo juicio, de acuerdo con los correspondientes principios de derecho consignados en la presente.

*Revocada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, Figueras y Wolf, que manifestó estar conforme con la parte dispositiva.